UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
MICHAEL ALEMAN-VALDIVIA and FREDDY SANCHEZ,
individually and on behalf of all others similarly situated,

                                 Plaintiffs,

                  -against-

TOP DOG PLUMBING & HEATING CORP., FIRST CHOICE
PL, INC., VERONICA AZULAI, and RON MAIMON
AZULAI,

                                 Defendants.
-----------------------------------------------------------------------X

Civil Action No.
1:20-cv-00421-LDH-PK

DECLARATION OF
MICHAEL
ALEMAN-VALDIVIA

       MICHAEL ALEMAN-VALDIVIA, under penalty of perjury, affirms and states as follows:

       1.     I am a plaintiff in this matter, and I am familiar with the facts and circumstances in this case, including the matters alleged in the Complaint.

       2.     I make this declaration in support of my motion for the relief requested in the Notice of Motion.

### Job Duties and Job Title

       3.     From in or around April 2014 until in or around March 2018, I worked for Top Dog Plumbing & Heating Corp. ("TDP"), First Choice PL, Inc. ("First Choice"), Veronica Azulai ("Veronica"), and Ron Maimon Azulai ("Ron") (collectively, "Defendants") [1], as a foreman and plumber.

       4.     As a foreman and plumber, my job duties included, among other things, loading a company truck with work materials and tools on a daily basis; instructing co-workers on the safety

---

[1] TDP has defaulted in this action and has failed to appear. Therefore, the collective motion seeks relief against First Choice, Ron, and Veronica only.

protocols for each project, including public works projects; ensuring co-workers abided by said safety protocols; installing and fixing water pipes, sewers, and water mains for both private and public use; and assisting on emergency jobs involving damaged water pipes, sewers, and water mains for both private and public customers.

5. While working for Defendants, Veronica and Ron supervised my work, directed employees, set schedules, and determined compensation.

6. Veronica and Ron were the people at TDP and First Choice with authority to hire and fire employees or otherwise make decisions impacting the terms and conditions of employment for employees at TDP and First Choice.

## Hours and Rates of Pay

7. Throughout my employment with TDP and First Choice, my hours and schedule varied but I regularly worked more than forty (40) hours per week.

8. From in or around April 2014 until in or around March 2018, my regular schedule was Mondays through Fridays from between approximately 7:00 a.m. and 8:00 a.m. to approximately 8:00 p.m., for an average of sixty-two and a half (62.5) hours worked per week. Additionally, on approximately twenty-five (25) occasions, I was required to work on emergency jobs, which required me to work from between 7:00 a.m. and 8:00 a.m. to approximately 5:00 a.m. the next morning, totaling approximately nine (9) additional hours on those day I worked on emergency jobs.

9. Throughout my employment, I was not given any meal or rest breaks.

10. Throughout my employment, Defendants did not track my hours or record the hours I worked each day.

11. Throughout my employment, Defendants paid me at a rate of $22.50 per hour up to forty (40) hours per week, and I was not paid any compensation for all hours I worked above forty (40) hours per week.

12. Defendants never paid me overtime wages of one and one-half (1.5) times my regular hourly rate of pay for the hours that I worked over forty (40) per week.

13. Throughout my employment, Defendants paid my wages in cash with no accompanying paystubs.

### Other Employees were Subjected to the Same Policies and Procedures

14. Based on my personal observations and conversations with other employees of Defendants, I am aware of at least fourteen (14) similarly situated employees, who are currently or were previously employed by Defendants, including:

   i. Orlando Cruz;

   ii. Walter a/k/a "Pistolita" (last name unknown);

   iii. Jose Formoso;

   iv. Eliseo (last name unknown);

   v. Julio Betanco;

   vi. Jose (last name unknown);

   vii. Errol White;

   viii. Larry (last name unknown);

   ix. Cano Torres;

   x. Salvador Lopez;

   xi. Lester Moncala; and

   xii. Paco (last name unknown).

15. These employees are currently employed or were previously employed by Defendants as foreman, plumbers, laborers, backhoe operators, and drivers, who performed job duties similar to the duties that I performed while I was employed by Defendants; who maintained work hours similar to the work hours I maintained while I was employed by Defendants; and who were not paid overtime compensation for the hours they worked over forty (40) per week while they were employed by Defendants.

16. For example, my former co-workers, Orlando Cruz, who worked as a backhoe operator; Walter a/k/a "Pistolita," Jose Formoso, Eliseo, Jose, and Larry, who worked as laborers; Julio Betanco, who worked as a driver and laborer; and Errol White, who worked as a driver, were assigned to the projects I was assigned to work on. As a result, I observed them work more than forty (40) hours per week.

17. I am also aware that these co-workers were not paid overtime wages for all hours worked over forty (40) per week. I am aware of this because on Fridays we, as well as other employees, typically picked up our wages at Defendants' truck yard. Our wages were paid in cash and were delivered to us in an envelope, which we often opened together and complained to each other that we were not paid enough and that we were not paid overtime wages when we worked more than forty (40) hours per week.

18. I am also aware that other employees, including Salvador Lopez, who worked as a backhoe operator; Cano Torres, who worked as a driver; Lester Moncala, who worked as a laborer; and Paco, who worked as a foreman and backhoe operator, worked more than forty (40) hours per week because we often discussed our weekly schedules together.

19. I am aware that these employees were also not paid overtime wages when they worked more than forty (40) hours per week because they told me during conversations at work that they were paid in the same manner that I was.

20. I also know that these employees were not paid overtime wages when they worked more than forty (40) hours per week because these employees were also typically present at Defendants' truck yard on Fridays to pick up their wages, and like other employees picking up their wages at Defendants' truck yard, these employees also complained that they were not paid overtime wages although they worked more than forty (40) hours per week.

21. Moreover, on various occasions Larry, Orlando Cruz, Eliseo, Salvador Lopez, and Walter a/k/a "Pistolita" told me that upon receiving their wages, they complained to Ron and/or Veronica that they worked more than forty (40) hours per week and that their wages did not include overtime wages.

22. Through these conversations, I learned that other employees, including the employees previously identified, also received an hourly rate of pay for forty (40) hours and were not paid for any overtime worked in excess of forty (40) hours.

23. Based on my observations and conversations with my coworkers, I am aware of at least fourteen (14) other current and former employees of Defendants, including the employees previously identified, who were also paid an hourly rate of pay for forty (40) hours and were not paid for any overtime worked in excess of forty (40) hours.

24. Ron and Veronica were aware that I and other non-exempt employees were working more than forty (40) hours per week because they directed our work and schedules. Also, Ron was often present throughout the workweek at the job sites and several employees, including

5

myself, complained to Ron and Veronica about working more than forty (40) hours per week and not being compensated with overtime wages.

25. Ron and Veronica knew that my coworkers and I were working more than forty (40) hours per week and chose to not pay us overtime wages.

26. On various occasions throughout my employment, I asked Ron why I was not being compensated for any of the hours I worked over forty (40) per week, and Ron responded that if I don't like it, I can leave.

27. It is my understanding that after my employment with Defendants concluded in or around March 2018, Defendants continued to pay employees an hourly rate of pay for forty (40) hours and did not pay employees for any overtime hours worked in excess of forty (40) hours per week.

28. After the end of my employment with Defendants, I kept in touch with several former co-workers, including Eliseo, Walter a/k/a "Pistolita," Orlando Cruz, and Salvador Lopez, who informed me that Defendants were still not paying employees overtime wages.

29. Because Defendants failed to pay employees overtime wages after my employment with Defendants ended, this means that other employees I am not aware of were likely victims of Defendants' unlawful policies.

30. I, along with many of the other employees and former employees of the Defendants, are native Spanish speakers. In order to ensure that those employees can read any notices, I request that the notices be provided in both English and Spanish.

31. I believe all non-exempt employees who have worked or continue to work for Defendants should receive notice of this lawsuit and be given an opportunity to join this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

02-24-2021
Date

*[signature]*
MICHAEL ALEMAN-VALDIVIA

```
TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
PARA EL DISTRITO ESTE DE NUEVA YORK
-----------------------------------------------------------------------X
```
MICHAEL ALEMAN-VALDIVIA y FREDDY SANCHEZ,
individualmente y en nombre de las otras partes en las mismas
condiciones,

                                    Demandantes,

                             -contra-

TOP DOG PLUMBING & HEATING CORP., FIRST CHOICE
PL, INC., VERÓNICA AZULAI, y RON MAIMON AZULAI,

                                    Demandados.
```
-----------------------------------------------------------------------X
```

Proceso Civil No.
1:20-cv-00421-LDH-PK

**DECLARACIÓN DE MICHAEL ALEMAN-VALDIVIA**

MICHAEL ALEMAN-VALDIVIA, so pena de perjurio afirmo y declaro lo siguiente:

1. Soy el demandante en este caso y estoy familiarizado con los hechos y las circunstancias de este caso, incluyendo los asuntos alegados en la Demanda.

2. Hago esta declaración para apoyar mi moción por la reparación que se solicita en la Notificación de Moción.

## Obligaciones del Cargo y Nombre del Cargo

3. Desde o alrededor de abril de 2014 hasta o alrededor de marzo de 2018, trabajé para Top Dog Plumbing & Heating Corp. ("TDP"), First Choice PL, Inc. ("First Choice"), Verónica Azulai ("Veronica"), y Ron Maimon Azulai ("Ron") (colectivamente denominados los "Demandados") [1], como capataz y plomero.

4. Como plomero y capataz, las obligaciones de mi cargo, entre otras cosas, incluían, cargar un camión de la empresa con materiales de trabajo y herramientas diariamente, dar instrucciones a los compañeros sobre los protocolos de seguridad para cada proyecto, esto incluye

---

[1] TDP ha fallado en esta acción y no ha comparecido. Por ende, la solicitud colectiva interpone el recurso solamente contra First Choice, Ron, y Verónica.

1

proyectos de obras públicas, asegurar que los compañeros obedecieran dichos protocolos de seguridad, instalar y arreglar las tuberías de agua, las acantarillas y las cañerías para uso privado y público, así como ayudar en trabajos urgentes con tuberías, acantarillas y cañerías dañadas para los clientes de uso privado y público.

5.     Mientras trabajaba para los Demandados, Verónica y Ron supervisaban mi trabajo, daban instrucciones a los empleados, programaban los horarios y decidían las compensaciones.

6.     Verónica y Ron eran la personas en TDP y First Choice con autoridad para contratar y despedir a los empleados, o tomar decisiones que impactaban los términos y condiciones de empleo para los empleados en TDP y First Choice.

### Horas y Tarifas de Pago

7.     Durante mi empleo con TDP y First Choice, mis horas y mi horario variaron pero a menudo trabajaba más de cuarenta (40) horas por semana.

8.     Desde o alrededor de abril 2014 hasta o alrededor marzo de 2018 trabajé regularmente de lunes a viernes desde aproximadamente las 07:00 a.m. y 08:00 a.m. hasta aproximadamente las 08:00 p.m. para un total de aproximadamente sesenta y dos horas y media (62,5) por semana. Asimismo, por aproximadamente veinticinco (25) ocasiones, tuve que hacer trabajos urgentes en los que debía trabajar desde aproximadamente las 07:00 a.m. y 08:00 a.m. hasta aproximadamente las 05:00 a.m. del día siguiente lo que es un total de nueve (9) horas adicionales en los días que debía realizar trabajos de emergencia.

9.     Durante mi empleo no recibí ninguna hora de descanso u hora de comida.

10.    Durante mi empleo, los Demandados no supervisaron o registraron las horas que trabajé cada día.

2

11. Durante mi empleo, los Demandados me pagaron una tarifa de $22,50 por hora hasta cuarenta (40) horas por semana. No recibí ninguna compensación por todas las horas que trabajé por encima de las cuarenta (40) horas por semana.

12. Los Demandados nunca me pagaron por sobretiempo de 1,5 veces el sueldo regular por hora por las horas que trabajé por encima de las cuarenta (40) horas por semanas.

13. Durante mi empleo, los Demandados pagaron mi sueldo en efectivo sin ningún recibo de nómina.

**Otros empleados estuvieron sujetos a las mismas directivas y procedimientos**

14. Con base en mis observaciones y conversaciones con los otros empleados de los Demandados, sé que por lo menos catorce (14) empleados tienen una situación similar y trabajan o trabajaron para los Demandados, a saber:

   i. Orlando Cruz

   ii. Walter, conocido como "Pistolita" (apellido desconocido)

   iii. Jose Formoso

   iv. Eliseo (apellido desconocido)

   v. Julio Betanco

   vi. Jose (apellido desconocido)

   vii. Errol White

   viii. Larry (apellido desconocido)

   ix. Cano Torres

   x. Salvador Lopez

   xi. Lester Moncala

   xii. Paco (apellido desconocido)

15. Estos empleados trabajan o trabajaron para los Demandados como capataces, plomeros, obreros, operadores de excavadoras y conductores. Asimismo, desempeñaron responsabilidades laborares similares a las que realicé cuando trabajé para los Demandados, tuvieron las horas de trabajo similares a las que yo tuve cuando trabajé para los Demandados y no recibieron compensación por sobretiempo por las horas que trabajaron por encima de las cuarenta (40) horas por semana cuando fueron empleados de los Demandados.

16. Por ejemplo, a mis ex compañeros Orlando Cruz quien trabajaba como operador de excavadora, Walter (conocido como "Pistolita), José Formoso, Eliseo, José y Larry quienes trabajaban como obreros, Julio Betanco quien trabajaba como conductor y obrero, así como Errol White quien trabajaba como conductor, les fueron asignados los proyectos que tuve que trabajar. Como resultado, los observé trabajar más de cuarenta (40) horas por semana.

17. Sé que estos compañeros de trabajo no recibieron pagos por sobretiempo por todas las horas trabajadas por encima de las cuarenta (40) horas por semana. Soy consciente de ello porque los viernes, nosotros y otros empleados usualmente recogíamos nuestros pagos en el patio de camiones de los Demandados. Nuestros salarios se pagaban en efectivo y eran entregados en un sobre el cual usualmente lo abríamos juntos. Nos quejábamos entre nosotros porque no nos pagaban lo suficiente y porque no nos pagaban por sobretiempo cuando trabajábamos por encima de las cuarenta (40) horas por semana.

18. Sé que otros empleados, esto incluye a Salvador Lopez quien trabajaba como operador de excavadoras, a Cano Torres quien trabajaba como conductor, a Lester Moncala quien trabajaba como obrero y a Paco quien trabajaba como capataz y como operador de excavadoras, trabajaron más de cuarenta (40) horas por semana porque usualmente hablábamos de nuestros horarios semanales.

19. Sé que estos empleados no recibieron pagos por sobretiempo cuando trabajaron más de cuarenta (40) horas por semana porque en nuestras conversaciones en el trabajo me mencionaron que les pagaban de la misma forma que me pagaban a mí.

20. Sé que estos empleados no rcibieron pagos por sobretiempo cuando trabajaron más de cuarenta (40) horas por semana porque ellos usualmente estaban en el patio de camiones de los Demandados para recoger sus pagos y como los otros empleados que buscaban sus salarios en el patio de camiones de los Demandados, también se quejaban de que no recibían pagos por horas adicionales cuando trabajaban más de cuarenta (40) horas por semana.

21. Además, en repetidas ocasiones, Larry, Orlando Cruz, Eliseo, Salvador Lopez, y Walter (conocido como "Pistolita") me dijeron que cuando recibieron sus pagos se quejaron con Ron y/o Verónica, les dijeron que trabajaron más de cuarenta (40) horas por semana y que sus salarios no incluían pagos por horas adicionales.

22. Con estas conversaciones, supe que otros empleados, incluidos los empleados antes identificados, también recibieron una tarifa de pago por hora por cuarenta (40) horas y que no recibieron compensaciones por horas adicionales cuando trabajaban más de cuarenta (40) horas.

23. Con base en mis observaciones y conversaciones con mis compañeros de trabajo, sé que por lo menos catorce (14) otros empleados y ex empleados de los Demandados, esto incluye a los empleados antes identificados, también recibieron una tarifa de cuarenta (40) horas por semana y que no recibieron pagos por sobretiempo cuando trabajaban más de cuarenta (40) horas.

24. Ron y Verónica sabían que yo y otros empleados no exentos trabajábamos más de cuarenta (40) horas por semana porque estaban a cargo de nuestro trabajo y de nuestros horarios. Asimismo, Ron usualmente estaba presente en la semana laboral y en los lugares de trabajo. Varios

5

empleados, incluidos yo mismo, nos quejamos con Ron y Verónica por no recibir pagos por sobretiempo cuando trabajamos más de cuarenta (40) horas por semana.

25. Ron y Verónica sabían que mis compañeros de trabajo y yo trabajábamos más de cuarenta (40) horas por semana y decidieron no pagarnos por sobretiempo.

26. En repetidas ocasiones durante mi empleo, le pregunté a Ron por qué no me pagaban las horas cuando trabajaba más de cuarenta (40) horas por semana; a lo que Ron me dijo que si no me gustaba podía irme.

27. Entiendo que después de haber trabajado con los Demandados alrededor de marzo de 2018, los Demandados continuaron pagando una tarifa por hora por las cuarenta (40) horas y que no les pagaron por sobretiempo a los empleados que trabajaron más de cuarenta (40) horas por semana.

28. Después de haber trabajado con los Demandados, mantuve contacto con varios ex compañeros de trabajo, incluidos Eliseo, Walter (conocido como "Pistolita"), Orlando Cruz y Salvador Lopez. Ellos me dijeron que los Demandados aún no les pagaban a los empleados por sobretiempo.

29. Puesto que los Demandados no le pagaron por sobretiempo a los trabajadores después de haber trabajado con ellos, esto significa que los otros empleados no saben que fueron víctimas de las políticas ilegales de los Demandados.

30. Mi lengua materna y la de muchos otros empleados y ex empleados es el español. Con el fin de asegurar que estos empleados puedan leer cualquier aviso, solicito que estos sean proporcionados en inglés y en español.

31. Creo que cualquier empleado no exento que haya trabajado o siga trabajando para los Demandados deba recibir avisos de este juicio y tener la oportunidad de unirse al caso.

De conformidad con el código de los Estados Unidos 28, sección 1476, declaro so pena de perjurio que lo anterior es cierto y correcto.

_02-24-2021_
Fecha

_[signature]_
MICHAEL ALEMAN-VALDIVIA



# CERTIFICATE OF ACCURACY

I, **Gabriela Chaquinga**, declare that I have provided Translation Services executed on this **24th day of February 2021**.

Furthermore, I declare that I am a professional translator from **English** into **Spanish**, and that I am competent to translate between those two languages.

I hereby certify that I have translated the attached documents from **English** into **Spanish** to the best of my knowledge and ability and believe this translation to be a true, accurate and complete translation of the original files provided to me with title:

- Aleman Declaration - v5 - Final

No. of Pages: **07**

Sincerely,

*Gabriela Chaquinga*                               **02/24/2021**
Gabriela Chaquinga                                 Date