UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
MICHAEL ALEMAN-VALDIVIA and FREDDY :
SANCHEZ, individually and on behalf of all others :
similarly situated, :
                                         :
                          Plaintiff, :
                                          :
         -against- :
                                          :
TOP DOG PLUMBING & HEATING CORP., FIRST :
CHOICE PL, INC., VERONICA AZULAI, and RON :
MAIMON AZULAI, :
                                          :
                          Defendants. :
-------------------------------------------------------------------- x

MEMORANDUM &
ORDER

20-CV-421 (LDH)(MMH)

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Michael Aleman-Valdivia and Freddy Sanchez bring this wage and hour action, individually and on behalf of other persons similarly situated, against Defendants Top Dog Plumbing & Heating Corp. ("TDP"),[1] First Choice PL, Inc. ("First Choice"), Veronica Azulai, and Ron Maimon Azulai (collectively, "Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190, 215, 220 and 650*,* and New York common law. Plaintiffs allege that Defendants implemented a policy in which they refused to pay their employees the applicable minimum wages and the requisite overtime rates for all hours worked in excess of forty hours per week. (*See generally* 2d Am. Compl., ECF No. 28.)[2]

---

[1] TDP has not appeared in this action.
[2] Plaintiffs filed an Amended Complaint on June 4, 2020 on consent. (Am. Compl., ECF. No. 18.) Plaintiffs filed a Second Amended Complaint but docketed it as an "Amended Complaint." *See* 8/11/2020 Order (granting motion to amend and ordering Plaintiffs to file "a Second Amended Complaint.").

On February 26, 2021, Plaintiff Aleman-Valdivia[3] moved for: (1) conditional certification as a collective action;[4] (2) court-authorized notice pursuant to 29 U.S.C. § 216(b); and (3) expedited discovery. (Pl.'s Mem., ECF No. 42-7.)[5] Defendants filed their opposition to the motion on March 24, 2021, asserting, *inter alia*, that Plaintiff "has not . . . met the minimal standards for justifying a conditional class certification of the scope and size he seeks." (Defs.' Opp'n Mem., ECF No. 44 at 1.) Plaintiff filed a reply in support of his motion on April 8, 2021. (Pl.'s Reply, ECF No. 46.)

For the reasons set forth below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## I.   FACTUAL BACKGROUND

The following asserted facts are taken from the Second Amended Complaint and Declarations submitted in support of Plaintiff's motion for conditional certification.

Defendants Veronica Azulai and Ron Maimon Azulai own and operate First Choice, a plumbing and heating company that jointly employed Plaintiff with TDP, another plumbing and heating company. (2d Am. Compl., ECF No. 28 ¶ 10.) Plaintiff was employed by Defendants as a foreman and plumber from approximately April 2014 to March 2018. (Aleman-Valdivia Decl., ECF No. 42-6 ¶ 3.) His work duties included "loading a company truck with work materials and tools on a daily basis; instructing co-workers on the safety protocols for each project, including

---

[3] Plaintiff Freddy Sanchez is not a member of the putative collective class but remains a plaintiff in this action. (Pl.'s Mem., ECF No. 42-7 at 1 n.1.)

[4] In the Notice of Motion, Plaintiff requests an order granting "conditional class certification," which is properly asserted pursuant to Federal Rule of Civil Procedure ("Rule") 23. (Pl.'s Mot., ECF No. 42.) However, Plaintiff argues solely for FLSA collective action certification pursuant to Section 216(b). (*See* Pl.'s Reply, ECF No. 46 at 5 n.4 ("The Motion does not seek a collective action relating to NYLL claims.")

[5] "Pl.'s Mem." refers to Plaintiff's memorandum of law in support of the motion (ECF No. 42-7) and "Pl.'s Mot." refers to the supporting exhibits.

public works projects; ensuring co-workers abided by said safety protocols; installing and fixing water pipes, sewers, and water mains for both private and public use; and assisting on emergency jobs involving damaged water pipes, sewers, and water mains for both private and public customers." (*Id.* ¶ 4.) Plaintiff alleges that he worked an average of 62.5 hours per week and that on several occasions he was required to work emergency jobs from approximately 7:00 a.m. or 8:00 a.m. in the morning until approximately 5:00 a.m. the following day. (*Id.* ¶ 8.) Plaintiff also alleges that he was paid his wages in cash without paystubs, that Defendants did not track his hours worked, and that he was never paid any overtime wages for the time he worked above forty hours per week. (*Id.* ¶¶ 10–13.)

Plaintiff alleges that he and at least twelve[6] similarly situated former and current employees were subject to the same policies and procedures. (*Id.* ¶ 14.) Specifically, Plaintiff names at least twelve other similarly situated employees, whom he believes also worked in excess of forty hours per week and were not paid the requisite overtime wages "[b]ased on [his] personal observations and conversations with other employees of Defendants." (*Id.*) These employees worked or continue to work as foremen, plumbers, laborers, backhoe operators, and drivers, with similar job duties and work hours as Plaintiff, and also did not receive overtime pay for their work in excess of forty hours per week. (*Id.* ¶¶ 15, 19, 22.) Finally, Plaintiff alleges that the individual Defendants were aware that non-exempt employees were working over forty hours per week without overtime

---

[6] Plaintiff states that he is "aware of at least fourteen (14) similarly situated employees," but only lists twelve names. (Aleman-Valdivia Decl., ECF No. 42-6 ¶ 14.) Plaintiff appears to adopt the lower number in his Reply Brief. (*See* Pl.'s Reply, ECF No. 46 at 1 ("[T]he Aleman Decl[aration] provides a specific and detailed account of Plaintiff's observations [of] and conversations with numerous similarly situated employees. See [*sic*] Aleman Decl. ¶¶ 14, 16, 18–19 (identifying 12 similarly situated employees . . . .))").

compensation, and that Defendants ignored their duty to adequately pay their employees' overtime wages.  (*Id.* ¶¶ 21, 24–26.)

## II.   <u>DISCUSSION</u>

### A. **Conditional Certification of the Proposed Class**

#### 1.   <u>Legal Standard</u>

Under the FLSA, plaintiffs may proceed "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).  This is known as a "collective action." *See Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010); *Ahmed v. T.J. Maxx Corp.*, No. 10-CV-3609 (ADS)(ETB), 2013 WL 2649544, at *7 (E.D.N.Y. June 8, 2013).  A collective action under the FLSA differs from the typical class action under Rule 23 because "a party seeking conditional certification of a collective action need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation."  *Ahmed*, 2013 WL 2649544, at *7.  Additionally, unlike under a Rule 23 class, members of an FLSA collective action must affirmatively "opt in" to the action.  *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Under the FLSA[,] 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action.  The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . .") (internal citations omitted).

Although not expressly mandated under the FLSA, courts in the Second Circuit apply a two-step process when analyzing the proposed certification of a collective action.  *Myers*, 624 F.3d at 554–55 ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible.").  The first step, termed "conditional certification," at issue here, "generally

takes place before any significant discovery." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014).  As such, conditional certification imposes merely a "minimal burden" on the plaintiff and is satisfied by a showing that the purported class members are "similarly situated." *Id.*  This analysis requires a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted).  The second step of the collective action inquiry typically follows the completion of discovery and requires the court to examine the evidentiary record to determine whether the opt-in plaintiffs are, in fact, similarly situated. *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  If the court determines that the opt-in plaintiffs are not in fact similarly situated, the class is decertified, and the opt-in plaintiffs' claims are dismissed without prejudice. *Id.* (citing *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 n.1 (W.D.N.Y. 2008)).

While this initial step of collective action certification imposes a relatively low burden, a plaintiff may not use "unsupported assertions" to prove her claims.  *Id.*  However, "[a] named plaintiff is not required to show an actual FLSA violation at this stage, but rather only that a factual nexus exists between the plaintiff's situation and the situation of other potential plaintiffs." *Calderon v. King Umberto, Inc.*, 892 F. Supp. 2d 456, 459 (E.D.N.Y. 2012) (internal quotation marks omitted).  "In making this showing, nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan is required." *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 317 (E.D.N.Y. 2016) (internal citations omitted).

2.  <u>Similarly Situated Employees</u>

Plaintiff has met his minimal burden of showing that the potential opt-in class members are similarly situated for the purposes of conditional certification. *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012).

Plaintiff asserts a potential class consisting of current and former "foremen, plumbers, laborers, backhoe operators, and drivers, who performed job duties similar to the duties" Plaintiff performed.  (Aleman-Valdivia Decl., ECF No. 42-6 ¶ 15.)  Plaintiff provides the names of at least twelve other employees whom he asserts were subject to the same policy wherein employees did not receive overtime pay for hours worked in excess of forty hours per week.  Plaintiff's knowledge of these other employees and their experiences is based on his observations and conversations with several other employees at the truck yard, where Plaintiff and other employees complained that they had not been paid the wages they were owed.  (*Id.* ¶¶ 15–24.)  Plaintiff also claims that Defendants were aware that he and other employees were working over forty hours per week without receiving overtime pay.  (*Id.* ¶ 27.)

Plaintiff's assertions regarding lack of overtime pay are bolstered by the "Employee Work Schedule"[7] included with his application.  (Pl.'s Mot., Ex. D, ECF No. 42-5.)  This document includes five weeks of pay records that lists Plaintiff's name next to boxes with "X" marks indicating the days he worked that week.  (*Id.*)  The last column, entitled "OVER TIME," is blank, suggesting that Plaintiff did not receive any overtime pay for those weeks.  (*Id.*)  Although most of the names in the document have been redacted, the Employee Work Schedule appears to include entries for some of Defendants' other employees.  (*Id.*)  Similarly, there are no figures or notations

---

[7] The document is titled "Employee Work Schedual." (Pl.'s Mot., Ex. D, ECF No. 42-5.)

in the "OVER TIME" box for these other employees, suggesting that they also did not receive any overtime wages. (*Id.*)

Such a showing, particularly where Plaintiff is able to name specific individuals and assert knowledge that these employees were not adequately paid, is sufficient at this stage. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003) (granting conditional certification where plaintiff's declaration "identified by name a number of current or former . . . employees who held the same or similar positions as the Plaintiff . . . who, like Plaintiff, were paid a fixed weekly salary, and may not have received overtime compensation if he or she worked in excess of forty hours each week."). Thus, Plaintiff's allegations regarding his conversations with his fellow employees, that he and other employees regularly worked in excess of forty hours per week, and the Employee Work Schedule suggesting that Plaintiff and other employees did not receive overtime wages, demonstrate "a factual nexus" indicating a relationship "between the plaintiff's situation and the situation of other potential plaintiffs" sufficient for the purposes of conditional collective action certification. *Calderon*, 892 F. Supp. 2d at 459 (internal quotation marks omitted).

In response to Plaintiff's motion, Defendants proffer several competing facts and affidavits disputing, *inter alia*, Plaintiff's dates of employment, Plaintiff's job duties, and the number of hours Plaintiff and the purported class members worked.[8] (*See* Defs.' Opp'n Mem., ECF No. 44 at 2–4.) However, the Court does not assess the credibility of competing facts on a motion for

---

[8] Additionally, Defendants argue that "conditional certification should be limited to the sole issue of FLSA overtime violations" and "should not include New York Labor Law Claims." (Defs.' Opp'n Mem., ECF No. 44 at 7.) The Court, however, need not address this argument because Plaintiff has not sought to certify his NYLL claims as part of the present action. (*See* Pl.'s Mem., ECF No. 42-7 at 1; *see also* Pl.'s Reply, ECF No. 46 at 5, n.4 ("The Motion does not seek a collective action relating to NYLL claims."))

conditional certification, which would be "inappropriate at this stage." *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 272 (S.D.N.Y. 2012); *see also Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (declining "to wade into a thicket of competing factual assertions at this preliminary stage.").

Defendants argue that "Plaintiff only makes conclusory allegations as to the other potential class members" and therefore does not establish the requisite factual nexus for collective action certification.  (Defs.' Opp'n Mem., ECF No. 44 at 5.)  However, courts have rejected similar arguments about the inadequacy of a plaintiff's factual allegations.  *See, e.g.*, *Kemper v. Westbury Operating Corp.*, No. CV 12-0895 (ADS)(ETB), 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012); *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 363 (E.D.N.Y. 2007) ("Defendants' argument that the affidavits are insufficient to satisfy the burden for a notice to be sent because they present mere conclusory allegations is inaccurate.  Courts in this Circuit regularly rely on such evidence to determine the propriety of sending a collective action notice.").  In fact, to determine whether a collective action can be conditionally certified, courts "often authorize notice based solely on the personal observations of one plaintiff's affidavit." *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 369 (S.D.N.Y. 2014) (internal citation and quotation marks omitted); *see also Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008) (finding that plaintiff's "well-pleaded allegations" were sufficient to justify mailing notice to potential collective action members); *see also Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 318 (E.D.N.Y. 2016) ("[C]ourts have routinely found that the allegations in the pleadings and the personal observations of one plaintiff's affidavit are sufficient to make the modest factual showing necessary to conditionally certify a class") (internal citation and quotation marks omitted).

Defendants also argue that Plaintiff is not similarly situated to the other potential plaintiffs because he was engaged in a supervisory role as a foreman and because employees may have worked across various job sites. (Defs.' Opp'n Mem., ECF No. 44 at 6-7.)  But Plaintiff, who was employed as both a plumber and a foreman, alleges that his main duties consisted of manual work, similar to the other plaintiffs in this potential class.  (*See* Pl.'s Reply, ECF No. 46 at 2; *see also* Aleman-Valdivia Decl., ECF No. 42-6 ¶ 4.)  It is well established that prospective class members need not have the exact same duties or jobs to be similarly situated for the purposes of conditional certification of a class. *Cabrera v. Stephens*, No. 16-CV-3234 (ADS)(SIL), 2017 WL 4326511, at *5 (E.D.N.Y. Sept. 28, 2017).  The analysis hinges on whether the employees "were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation," not a formulaic requirement that all the employees have the same job titles and duties. *Cano v. Four M Food Corp.*, No. 08–CV–3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (emphasis in original); *see also Cabrera*, 2017 WL 4326511, at *5 ("All prospective class members need not have the same duties to be similarly situated.").[9]

While Plaintiff asserts that in addition to these manual duties, he was responsible for "ensuring co-workers abided by said safety protocols," (Aleman-Valdivia Decl., ECF No. 42-6 ¶ 4), this does not preclude Plaintiff from being similarly situated to other employees.  Courts in this Circuit have granted conditional certification for collective actions involving both foremen and laborers (or similar classes of employees with limited oversight responsibilities) working across different work sites when that class of employees was subject to the same policy of failure to pay adequate overtime wages. *Morris*, 896 F. Supp. 2d at 272 ("[T]he Court authorizes the

---

[9] For this reason, the Court rejects the Defendants' unsupported argument that drivers should not be considered as part of the collective action.  (Defs.' Opp'n Mem., ECF No. 44 at 7.)

distribution of notice to all foremen and laborers at all of defendants' construction sites, including those where no named plaintiff worked"); *see also Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492 (AJN), 2017 WL 2987214, at *8 (S.D.N.Y. Feb. 13, 2017) (authorizing a conditional class of assistant store managers, customer service representatives, and delivery drivers where treated similarly with respect to a clock-out policy).   In contrast, where foremen had additional responsibilities that included supervision of payroll and work hours for other laborers and members of the crew, they could not be considered similarly situated to crewman. *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002) (declining to certify a class where "[f]oremen [were] the direct supervisors of crewmen . . . supervising and directing the work of the crews," and performed "administrative duties associated with the planning and execution of the field work, the payroll for themselves and their crews, and the cleaning and maintenance of the tools and company vehicles.").   Such circumstances do not apply here.

Based on Plaintiff's pleadings, where Plaintiff alleges that Defendants "directed our work and schedules" and that Plaintiff received his wages alongside other employees in the truck yard from Defendants (*see* Aleman-Valdivia Decl., ECF No. 42-6 ¶¶ 17, 21, 24), there is no allegation that Plaintiff was "the direct supervisor" or that he had any responsibility for the work hours or the payroll of any other employees.  Additionally, the fact that Plaintiff's work schedule seems to have been tracked alongside at least thirteen other employees (*see* Pl.'s Mot., Ex. D, ECF No. 42-5) suggests that Plaintiff did not have a supervisory role over his work hours or other employees' work hours and that Defendants maintained responsibility for supervising their employees' work schedules and maintaining payroll.

Accordingly, Plaintiff has satisfied the minimal burden at the first step of this FLSA collective action and has made a "modest factual showing" to demonstrate that he and the potential

class members are similarly situated.  *See Jenkins*, 853 F. Supp. 2d at 321; *Calderon*, 892 F. Supp. 2d at 459–60.  The potential class includes all foremen, plumbers, laborers, backhoe operators, and/or drivers who worked for TDP and/or First Choice at any time during the time period discussed below.

In reaching its conclusion, the Court does not find that Plaintiff will necessarily prevail on the merits of his claim because "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here."  *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citations omitted).  Defendants' factual rebuttals to Plaintiff's assertions can be further developed through discovery.  *Morris*, 896 F. Supp. 2d at 272 ("The accuracy of the parties' competing views will be tested through discovery and may be raised before the Court on a motion to decertify the class after the close of discovery.")

### B.  Scope of the Proposed Class

Plaintiff requests that the potential class include similarly situated non-exempt employees who worked for Defendants during a six-year period prior to the date Plaintiff filed the Complaint (*i.e.*, from January 24, 2014 through the present) because he asserts claims under the FLSA and the NYLL.  (Pl.'s Mem., ECF No. 42-7 at 11.)  Plaintiff argues that "courts in this District routinely deny requests to limit the Notice time period to three . . . years, as even where claims are untimely under FLSA, they may shed light on the appropriateness of certifying a class action under the NYLL."  (*Id.*)  Defendants, on the other hand, argue that a six-year notice period is inappropriate because a proposed collective action pursuant to the FLSA cannot also include NYLL claims when Plaintiff does not seek Rule 23 certification.  (Defs.' Opp'n Mem., ECF No. 44 at 8–9.)

As an initial matter, a three-year notice period is appropriate here. The FLSA contains a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. 29 U.S.C. § 255(a). "Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (citation omitted). Further, "[Plaintiff has] proffered facts sufficient to support an inference [of] willfulness." *Garriga v. Blonder Builders Inc.*, No. CV-17-497 (JMA)(AKT), 2018 WL 4861394, at *6 (E.D.N.Y. Sept. 28, 2018) (citing *Calderon*, 892 F. Supp. 2d at 462 ("The allegations contained in plaintiffs' [c]omplaint concerning defendants' failure to provide their employees with proper overtime compensation are sufficient at this preliminary stage to warrant authorizing notice for a three-year period.")).

The Court notes that some courts in this Circuit have authorized six-year notice periods where plaintiffs asserted both FLSA and NYLL claims in the operative complaints. *See, e.g., Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 CIV. 5124 (AT), 2014 WL 1487279, at *6 (S.D.N.Y. Apr. 11, 2014) (applying a six-year notice period); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (same); *Ansoralli v. CVS Pharmacy, Inc.*, No. 16-CV-1506 (CBA) (RER), 2017 WL 570767, at *3 (E.D.N.Y. Feb. 13, 2017) (same). Specifically, the courts found it "prudent and expedient [. . .] to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA." *Guaman v. 5 M Corp.*, No. 13 CIV. 03820 (LGS), 2013 WL 5745905, at *5 (S.D.N.Y. Oct. 23, 2013) (quoting *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 94–95 (E.D.N.Y. 2010)). In these cases, courts found a six-year notice period appropriate because discovery of these earlier claims, even if time-barred by the FLSA, could "shed light on the appropriateness of certifying a class under the NYLL." *Guaman*, 2013 WL 5745905, at *5.

Oher courts in this Circuit have declined to approve a six-year notice period because the "motion before the Court is only for collective certification of FLSA opt-in class, and not class certification under Fed. R. Civ. P. 23 for claims under the NYLL." *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (citing *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1, 2011)); *see also Romero v. La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 649 (S.D.N.Y. 2013) (declining to allow a six-year notice period when "[t]hree years is the maximum time period to join an FLSA collective action and there is no New York state class action certified as of yet"). In these cases, a three-year notice period made more sense because of "the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred." *Trinidad*, 962 F. Supp. 2d at 564.

Here, the Court is persuaded because a motion to conditionally certify an FLSA class action has been found to "encompass only FLSA violations." *Hanming Feng v. Soy Sauce LLC,* No. 15 CV-3058 (ENV)(LB), 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016). Because NYLL claims are subject to Rule 23's more stringent class certification requirements, applying a six-year notice period for the FLSA claims is not warranted at this juncture. *Trinidad*, 962 F. Supp. 2d at 564. Moreover, "the growing trend in this district appears to be limiting the notice period to three years." *Hwangbo v. Kimganae, Inc.*, 19-CV-6356(DLI)(SJB), 2021 WL 2843839, at *18 (E.D.N.Y. Jun. 1, 2021) (quoting *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011)). A six-year notice period could confuse potential opt-in plaintiffs who are ineligible to bring claims under the FLSA because they are time barred. *Hwangbo*, 2021 WL 2843839, at *18. Additionally, because Rule 23 claims are opt-out and not opt-in, "those class members [with claims under the NYLL] would face no risk of claim lapse . . . ." *Gurrieri v. Cty. of Nassau*, No. 16-CV-

6983(ADS)(SIL), 2019 WL 2233830, at *8 (E.D.N.Y. May 23, 2019).  Accordingly, Plaintiff's Notices shall be disseminated for the three-year period authorized for willful violations of the FLSA, commencing from January 24, 2017.  29 U.S.C. § 255(a); *Romero*, 968 F. Supp. 2d at 648–49.

## C. Equitable Tolling

The next step is to determine the applicable time periods when the opt-in plaintiffs are subject to equitable tolling.  The parties agree that the FLSA statute of limitations as to the opt-in plaintiffs should be tolled based on the Honorable Peggy Kuo's FLSA discovery order in this case,[10] which tolled the period "from the date of this Order until the parties file[d] their Rule 26(f) Proposed Discovery Plan"—*i.e.*, from February 3, 2020 until January 8, 2021 (the "Kuo Order").  (*See* Order in FLSA Case, ECF No. 10 at 4 ¶ 6; Pl.'s Mem., ECF No. 42-7 at 11; Defs.' Opp'n Mem., ECF No. 44 at 9.)  In addition, Plaintiff also asserts that the FLSA statute of limitations should be tolled from February 26, 2021, the date on which his motion for collective action certification was filed, until Plaintiff is able to send notice of the litigation to the potential opt-in plaintiffs.  (Pl.'s Mem., ECF No. 42-7 at 11.)  Defendants counter that the Court should not consider any other tolling except the period specified in the Kuo Order because Plaintiff's conversations with other potential opt-in plaintiffs about potential FLSA violations occurred over three years ago.  According to Defendants, opt-in plaintiffs should not get the benefit of additional tolling when they knew about potential FLSA violations but did not take any action on the potential claims.  (Defs.' Opp'n Mem., ECF No. 44 at 9.)

---

[10] The case was assigned to the undersigned on June 23, 2021.

For an FLSA action, "the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga*, 2018 WL 4861394, at *10 (citing 29 U.S.C. § 256(b)).  "[C]ourts in this Circuit have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491 (WFK)(VMS), 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015); *see also Chui v. Am. Yuexianggui of LI LLC*, No. CV 18-5091 (SJF) (AKT), 2020 WL 3618892, at *10 (E.D.N.Y. July 2, 2020) ("Given the length of time that has passed since the instant motion was filed, and the diligence of Plaintiff's counsel in pursuing certification, the Court is granting equitable tolling from the date the motion was filed.").

Under the present circumstances, the Court concludes it is appropriate to toll the three-year statute of limitations for an additional period between the initial filing of the motion for conditional certification and the date of this Memorandum and Order (and not until such time as Plaintiff may circulate the Notices, as Plaintiff has requested.)  *Gurrieri*, 2019 WL 2233830, at *9.  Plaintiff has been diligent in moving for conditional certification after the completion of mediation, filing his motion for conditional certification on February 26, 2021, less than one month after the parties failed to settle the case through mediation.  (*See* 1/29/2021 Order.)  This case was transferred to the undersigned on June 23, 2021, over two months after the motion for conditional certification was fully briefed.  (*See* 6/23/2021 Order.)  Given the length of time that the instant motion has remained pending, the Court grants Plaintiff's request for additional equitable tolling.  *Chui*, 2020 WL 3618892, at *10; *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

Accordingly, the statute of limitations for opt-in plaintiffs shall be tolled for the period set forth in the Kuo Order (*i.e.*, from February 3, 2020 to January 8, 2021) and for the period while the motion for conditional certification was pending (*i.e.*, from February 26, 2021 through today).[11]

**D. Proposed Notices to Potential Opt-in Plaintiffs**

Plaintiff also requests the Court's approval of their proposed Court-Authorized Notice of Lawsuit and accompanying Consent to Join form (together, the "Notice of Lawsuit"), a shorter text message ("the Notice Text Message"), and a reminder notice (the "Reminder Notice") (collectively, the "Notices") to the potential plaintiffs.  (Pl.'s Mot., Ex. B, ECF No. 42-3; Pl.'s Mem., ECF No. 42-7 at 13; Pl.'s Mot., Ex. C, ECF No. 42-4.)[12]  Specifically, Plaintiff requests that the Court approve the substance and form of the Notices; and several methods of dissemination of the Notices to include mail, email, text message, social media messenger platforms, and posting a hard copy.  (Pl.'s Mem., ECF No. 42-7 at 7–9, 11.)  Defendants object to the Notices because: (1) the Notices lack information about Plaintiff's specific claims and the specific discovery obligations of the potential plaintiffs; (2) the Reminder Notice is unnecessary; and (3) disseminating the Notices via social media is improper.  (Defs.' Opp'n Mem., ECF No. 44 at 8–11.)

---

[11] Any particularized challenge to a given opt-in plaintiff's statute of limitations will be entertained at the appropriate juncture.

[12] Plaintiff submits the Notice of Lawsuit and Reminder Notice in Spanish "[s]ince Plaintiff and other potential plaintiffs are native Spanish speakers." (Pl.'s Mem., ECF 42-7 at 9; Pl.'s Mot., Ex B, ECF No. 42-3; Pl.'s Mot., Ex. C, ECF No. 42-4.)  "Generally, courts permit notice to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Chui*, 2020 WL 3618892, at *10 (internal citations omitted).  Accordingly, the Court approves issuing the Notices in English and Spanish.

The Court grants Plaintiff's request to circulate and post the Notices, subject to the modifications and limitations set forth below.

### 1. Legal Standard

"Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360(RRM)(LB), 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) (internal quotations and citations omitted). The form and substance of the proposed court-authorized notice are left to the broad discretion of the district court. *Gurrieri*, 2019 WL 2233830, at *10 (citing *Sobczak*, 540 F. Supp. 2d at 364). The notices generally include "'a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.'" *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-cv-7332 (PAE)(BCM), 2021 WL 148751 at *12 (S.D.N.Y. Jan. 15, 2021) (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012)).

### 2. Content of the Notice of Lawsuit

Generally, the form of Plaintiff's proposed Notice of Lawsuit permits the opt-in plaintiffs to make an informed decision about whether to participate in the litigation. *See id*. The Notice of Lawsuit includes introductory paragraphs explaining the nature of the claims, a statement about

the Defendants' denial of any wrongdoing, and a summary of the opt-in plaintiff's legal rights and options.  (Pl.'s Mot., Ex. B, ECF No. 42-3 at 2–3.)  The Notice of Lawsuit further includes nine questions with corresponding answers to explain basic concepts including, *inter alia*, why the potential opt-in plaintiff is receiving the notice, instructions about how to join the collective action, and the consequences of joining or not joining the lawsuit.  (*Id.* at 3–4.)  The Notice also includes contact information for Plaintiff's and Defendants' respective counsels.  (*Id.* at 5.)  These elements of the Notice of Lawsuit are sufficient to notify potential opt-in plaintiffs about the lawsuit while accurately representing Defendants' position.  *See Yi Mei Ke*, 2021 WL 148751, at *12.

While Defendants correctly assert that the Notice of Lawsuit should contain "a neutral and non-technical reference to discovery obligations," *Hanming Feng*, 2016 WL 1070813, at *6 (quotations omitted), the Notice of Lawsuit states clearly that opt-in plaintiffs "may be asked to give testimony and information about [his/her] work" and that an opt-in plaintiff "should preserve all documents relating to your employment currently in your possession."  (Pl.'s Mot., Ex. B, ECF No. 42-3, Question 5.)

Defendants also argue, with no rationale or supporting authority, that the proposed Notice of Lawsuit should also include more factual allegations supporting Plaintiff's claims— specifically, that Plaintiff worked from 7:30 a.m. to 8:00 p.m. every week, that on least twenty-five occasions he worked from 7:30 a.m. to 5:00 a.m., and that he routinely worked on public works projects while employed by First Choice.  (*See* Defs.' Opp'n Mem., ECF No. 44 at 10.)  The Court rejects this argument.  The goal of the notice in an FLSA action is "to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants."  *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) (citations omitted).   Defendants' proposed

amendments to the Notices would improperly suggest that the potential opt-in plaintiffs' work hours must be identical to Plaintiff's in order to join the conditionally certified class. The Court will not allow such misleading statements in the Notices.

Finally, for the reasons stated above, Plaintiff must amend the start date for the potential opt-in plaintiffs' period of employment to January 24, 2017 (not January 24, 2014). *See* § II.B, *supra*.

3. Content of the Reminder Notice

The proposed Reminder Notice also meets the FLSA standard for notification, subject to the below modifications. The Reminder Notice alerts the potential opt-in plaintiffs that they have received the Notice of Lawsuit and reminds them of the appropriate method of joining the lawsuit. (Pl.'s Mot., Ex. C, ECF No. 42-4 at 2).

Defendants argue (with no authority in support) that the proposed Reminder Notice is unwarranted. (Defs.' Opp'n Mem., ECF No. 44 at 11.) The Court disagrees. Such reminder notices further serve the purpose of notifying all potential opt-in plaintiffs of the pendency of the action. *See, e.g.*, *Cabrera*, 2017 WL 4326511, at *8 ("Practical requests such as [notices and reminder notices] reasonably further the purpose of notice of a collective action under the FLSA"); *Morris*, 896 F. Supp. 2d at 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); *Chhab v. Darden Restaurants, Inc.*, No. 11 CIV. 8345 NRB, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (authorizing a reminder notice where it would serve the broad remedial purpose of the FLSA).

While the Reminder Notice is not intended to reiterate every provision of the Notice of Lawsuit, it should be crafted to avoid misleading potential opt-in plaintiffs or presenting a one-sided view of the litigation.  Unlike the Notice of Lawsuit, the proposed Reminder Notice does not remind opt-in plaintiffs about their discovery and preservation obligations, which "insure[s] that opt-in plaintiffs understand that their participation would entail greater obligations that participation in some Rule 23 class actions."  *Hanming Feng*, 2016 WL 1070813, at *6.  Further, as the Defendants correctly note, the Reminder Notice does not contain any information about Defendants' view of the case.  Plaintiff should amend the Reminder Notice to cure these omissions.

In addition, the instructions in the Reminder Notice impermissibly suggest that opt-in plaintiffs are required to act even if they do not want to join the lawsuit.  Specifically, the Reminder Notice states, **"IMPORTANT: [O]ur records indicate that you have not submitted a Consent Form.  In order to participate in the . . . collective action lawsuit and be eligible to collect unpaid wages, you must complete a Consent Form[.]"**  (Pl.'s Mot., Ex. C, ECF No. 42-4 (emphasis in the original).)  It further instructs, "**In order to participate in this lawsuit, your Consent Form must be post-marked or e-mailed**" by the opt-in deadline.  (*Id.* (emphasis in the original).)  These directives do not clarify that participation is voluntary.[13]  An unsophisticated opt-in plaintiff could conclude that the only option is to complete and return the Consent Form to Plaintiff's counsel, even if he or she did not want to join the collective action.  The Court cannot and will not permit such misleading language.

---

[13] In contrast, the Proposed Consent to Join Lawsuit Form clearly instructs opt-in plaintiffs to complete and return the form "if you received this form *and want to join this lawsuit*[.]" (Pl.'s Mot., Ex. B., ECF No. 42-3 (emphasis added).)

Finally, the Reminder Notice should include a statement of the Court's neutrality in this case. *See Lora v. To-Rise, LLC*, No. 16-CV-3604 (RRM)(ST), 2017 WL 11604705, at *18 (E.D.N.Y. July 18, 2017), *report and recommendation adopted*, No. 16-CV-3604 (RRM)(ST), 2017 WL 11604704 (E.D.N.Y. Sept. 15, 2017) (adding the following language for a reminder notice: "The Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendants' defenses. The Court does not encourage or discourage your participation in this case.").

Accordingly, the Court authorizes Plaintiff to issue the Reminder Notices with the following amendments. Plaintiff shall include the last paragraph of the Answer to Question 5 of the Notice of Lawsuit, or a shortened version thereof, to remind potential opt-in plaintiffs of their discovery obligations. The Court also grants Defendants' request to include the following statement in the Reminder Notice: "Defendants deny any wrongdoing and/or liability and maintains that all of their employees were and continue to be paid fairly and in accordance with federal and state labor laws." Further, the phrase "in order to participate" shall be amended to "if you want to participate" or "if you choose to participate" to accurately reflect the potential collective action members' optional (not mandatory) participation in the litigation. Finally, Plaintiffs should include language indicating that the Court does not encourage or discourage participation in the collective action.

### 4. Text Message Notice

Plaintiff requests permission for the Court to circulate an abbreviated version of the Notice of Lawsuit via text message. (Pl.'s Mem., ECF No. 42-7 at 9.) The text message notice consists of a single paragraph informing the recipient that "[i]f you have been employed as foremen, plumbers, laborers, backhoe operators, and drivers at TDP or First Choice anytime since January

24, 2014, you might be entitled to join a lawsuit claiming back pay for unpaid overtime compensation" and inviting the recipient to call or email Plaintiff's counsel to obtain additional information about the case. (*Id.*)  While a text message notice should naturally be shorter than a notice disseminated via email or mail, the Text Message Notice, like the Reminder Notice, should also include a statement regarding Defendants' denial of any wrongdoing.  And as noted, the relevant date for the proposed class is January 24, 2017, not January 24, 2014.  Accordingly, the Court approves the substance of the Text Message Notice as amended.

    5.  <u>Methods of Dissemination</u>

Plaintiff also seeks to disseminate the proposed notices (1) via regular mail; (2) via email; (3) by posting them at Defendants' truck yard; and (4) by sending a message via SMS text message and messaging and social media applications (*i.e.*, WhatsApp, Facebook Messenger, Instagram Direct Message, Snapchat, or other applications). (*See* Pl.'s Mem., ECF No. 42-7 at 7.)[14]  Plaintiffs argue that all the methods, particularly via social media messenger platforms, "increase[] the likelihood that as many potential plaintiffs as possible are notified, particularly when it comes to notifying manual laborers who many not regularly use e-mail and cannot be reached by regular mail."  (Pl.'s Reply, ECF No. 46 at 4.)   In order to send these notices, Plaintiff requests that Defendants produce the social media "handles" (*i.e.*, usernames) of the potential opt-in plaintiffs. (*Id.*)  While Defendants do not object to sending the Notices by mail and email or posting them in the truck yard, Defendants do object to the Notices being published "through social media of any form."  (Defs.' Opp'n Mem., ECF No. 44 at 11.)

---

[14] WhatsApp is a service that allows users to send text messages and voice messages and make voice calls through a user's mobile device or desktop.  The service requires the use of an internet connection and cellphone number.  Facebook, Instagram and Snapchat are all social media applications with a messenger feature that allows users to exchange direct messages with each other to their username.

Courts may allow dissemination of FLSA notices via social media messaging when the plaintiff has provided a "justification to deviate from the traditional methods [of mail, email, and text message] generally accepted by courts sitting in this Circuit for disseminating notice to the putative collective members." *Chui*, 2020 WL 3618892, at *10.  Of course, "[t]he COVID-19 public health crisis favors some form of electronic dissemination." *Panora v. Deenora Corp.*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020).  However, Plaintiff does not adequately demonstrate the need to disseminate the notice via social media messaging services such as Facebook Messenger.  Plaintiff maintains that "mobile phones are by far the most accessible communication tool for many workers," but fails to explain why standard text messages or direct social media channels such as WhatsApp do not provide adequate notice to potential opt-in plaintiffs via mobile phones.  (Pl.'s Mem., ECF No. 42-7 at 8.)  Accordingly, the Court orders that the notices shall be disseminated by (1) regular mail; (2) email; (3) posting the notice in the relevant truck yard and (4) sending a message via SMS text message and WhatsApp because of the similarities between standard SMS text message and WhatsApp.  *Panora*, 2020 WL 7246439, at *5 (allowing notice to be provided through "forms of direct communication with potential plaintiffs – including mail, e-mail, text message, and direct social media channels such as WhatsApp and WeChat").  Plaintiff may not disseminate the notices through social media messaging services, such as Facebook Messenger, Instagram, Snapchat, or similar applications.

### E.  Expedited Discovery Requests

Plaintiff further requests that the Court direct Defendants to produce within ten days a list of the names, last known addresses, telephone numbers, email addresses, social media handles, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all non-exempt employees.  (Pl.'s Mem., ECF No. 42-7 at 10.)  Plaintiff argues that social

security numbers are necessary so "Plaintiff's counsel can perform a skip trace for all notices returned as undeliverable due to a change of address." (*Id.* at 10 n.5.) Defendants object to providing social security numbers because this information is highly confidential. (Defs.' Opp'n Mem., ECF No. 44 at 12.) In the alternative, Defendants ask the Court to order the parties to enter into a confidentiality agreement. (*Id.*)

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 465 (E.D.N.Y. 2014). As addressed above, the Court denies Plaintiff's request to disseminate the Notices via social media platforms such as Facebook Messenger, Instagram, and Snapchat, and therefore Defendant is not required to disclose any social media handles for its current or former non-exempt employees.

Plaintiff also has not demonstrated a valid need for the production of social security numbers. While "courts often decline to allow discovery of social security numbers due to privacy concerns," they do so upon a showing that "names and contact information are insufficient to effectuate notice." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011). Here, Plaintiff argues that social security numbers can be used if regular mail is returned undeliverable because a potential plaintiff has moved. (Pl.'s Mem., ECF No. 42-7 at 10 n.5.) However, Plaintiff requested other methods of circulating the Notices (*i.e.*, via email, text message, and WhatsApp) for precisely this reason. (*See* Pl.'s Mem., ECF No. 42-7 at 7 ("Mail can be mis-delivered, misplaced, taken from shared mailboxes, or left unopened, particularly when it is sent from unrecognized sources. Also, Defendants may not have accurate or current mailing addresses for their former employees as addresses can change. Consequently, the most practical method of distributing notices under these circumstances includes sending notice by email, text message, and

24

instant message or social media applications to ensure that all or substantially all potential plaintiffs learn of this action.")) Plaintiff has not demonstrated why he needs social security numbers for the use of skip traces given the other methods of circulating the notices to reach potential plaintiffs who cannot be reached by mail. *Martinez v. JVA Indus. Inc.*, No. 20-CV-7977 (LJL), 2021 WL 1263133, at *6 (S.D.N.Y. Apr. 6, 2021). Accordingly, Plaintiff's request for the production of social security numbers is denied. *Id; see also Chowdhury v. Duane Reade, Inc.*, No. 06-CIV-2295(GEL), 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007).

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's motion for conditional certification, as follows:

1. Plaintiff has met his minimal burden of showing that the potential opt-in class members are similarly situated for the purposes of conditional certification. The potential class includes all foremen, plumbers, laborers, backhoe operators, and/or drivers who worked for TDP and/or First Choice at any time between January 24, 2017 and the present;

2. The applicable time period for the statute of limitations shall be the three years warranted for willful violations of the FLSA;

3. The FLSA statute of limitations for opt-in plaintiffs shall be tolled pursuant to the Kuo Order and from the date Plaintiff's motion was filed until the date of this Order;

4. The Court approves dissemination of the Notices, subject to the amendments set forth in this Order, to provide opt-in plaintiffs with accurate and timely notice concerning the pendency of the collective action;

5. Plaintiff shall disseminate the Notices via regular mail, email, and via WhatsApp within two weeks of the Court's approval of the final versions of the Notices, but Plaintiff shall not disseminate the Notices via any other direct messaging applications tied to other social media services.  Defendants shall post the approved Notice and Consent to Join Lawsuit in a conspicuous location in the Defendants' truck yard within two weeks of the Court's approval of the final versions of the Notices; and

6. On or before October 14, 2021, Defendants shall produce a computer-readable data file of the last known addresses, telephone numbers, email addresses, dates of employment, titles, compensation rates and hours worked per week for all potential class members but shall not be required to provide social media handles or social security numbers for these employees.

Plaintiff shall revise the Notices in accordance with this Order and serve a draft on Defendants by October 14, 2021.  Defendants must serve their objections on, or give their consent to, Plaintiff by October 21, 2021.  The parties shall file the final revised Notices as a joint motion for approval by October 28, 2021.

**SO ORDERED.**

Brooklyn, New York
September 30, 2021

 /s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge